DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from a judgment of the Fulton County Court of Common Pleas which dismissed the complaint of plaintiff-appellant, Medcorp Inc., for declaratory judgment and preliminary and permanent injunctions. Through that judgment, the trial court concluded that as a matter of law, Medicare and Medicaid payments made to an advanced life support services/ ambulance service company were not "operating funds from governmental entities" as that phrase is used in R.C. 505.44. Medcorp now challenges that judgment through the following assignment of error:
 {¶ 2} "The trial court erred in denying plaintiff/appellant's request for preliminary injunction and dismissing plaintiff/ appellant's complaint on the ground that Medicare and/or Medicaid payments are not `governmental funds' as contemplated in O.R.C. § 505.44."
 {¶ 3} On April 25, 2002, Medcorp filed a "Verified Complaint for Preliminary Injunction, Permanent Injunction, and Declaratory Judgment" against York Township. The complaint alleged that Medcorp is an Ohio corporation licensed to provide emergency medical transportation services, including advanced life support services, and that York Township entered into a contract with LifeStar Ambulance, Inc., for the provision of advanced life support services in York Township. The complaint further alleged that because LifeStar is a private non-profit ambulance company that receives over one-half of its operating funds from governmental entities, the contract was entered into in violation of the competitive bidding requirements set forth in the Ohio Revised Code. Medcorp then requested a preliminary injunction preventing York Township from acting upon the contract with LifeStar until the court made a final determination as to the validity of the contract; a permanent injunction preventing York Township from acting on its contract with LifeStar; and a declaratory judgment holding that York Township violated the competitive bidding requirements of the Ohio Revised Code, that prior to entering into a contract for advanced life support services York Township must first conduct a competitive bidding process as described in the Ohio Revised Code and that the contract between York Township and LifeStar is void.
 {¶ 4} Contemporaneously with the complaint, Medcorp filed a motion for a temporary restraining order to prevent York Township from acting on its contract with LifeStar for the provision of advanced life support services. The trial court immediately granted the temporary restraining order enjoining York Township from further acting on its contract with LifeStar for 14 days, or until the court extended the order, and set the matter for a hearing on Medcorp's request for a preliminary injunction.
 {¶ 5} York Township responded with a memorandum in opposition to the request for preliminary injunction in which it argued that Medcorp was not entitled to injunctive relief because York Township had not violated the applicable competitive bidding statute when it entered into its contract with LifeStar. More specifically, York Township asserted that because Medicare and Medicaid payments do not qualify as "operating funds from governmental entities," as that phrase is used in R.C. 505.44, York Township could enter into the contract with LifeStar without complying with the bidding provisions of R.C. 505.44. York Township also filed a motion to dismiss for failure to join a necessary party, i.e. LifeStar, pursuant to R.C. 2721.12.
 {¶ 6} On May 7, 2002, the lower court held a hearing on the request for a preliminary injunction. Prior to the hearing, Medcorp filed a memorandum in support of its request and supported the memorandum with the affidavit of Anthony Anteau. Anteau, the vice president in charge of operations at Medcorp, attested that Medcorp receives more than half of its operating funds from governmental entities, especially Medicare and Medicaid, and that Medcorp receives those funds when it bills Medicare or Medicaid directly for services provided to patients who are covered by either of these programs. Based on his experience with Medcorp, the American Ambulance Association, the Ohio Ambulance Association, and as a board member of Community Health Partners, Anteau stated that he could say with a high degree of certainty that any ambulance company operating in the state of Ohio receives more than half of its funding through governmental entities, especially Medicare and Medicaid. Based on this affidavit, as well as on evidence that LifeStar is a non-profit corporation whose presence in York Township would directly compete with Medcorp, Medcorp argued in its memorandum that York Township was required to comply with the bidding requirements of R.C. 505.44.
 {¶ 7} At the hearing, the court initially sought arguments on York Township's motion to dismiss for failure to join a necessary party. The arguments, however, quickly shifted to the issue of the necessity of the township to follow the competitive bidding requirements of R.C. 505.44
and whether Medicare and Medicaid payments received by LifeStar constituted "operating funds from governmental entities" as that phrase is used in the statute. At the conclusion of the hearing, the court found as a matter of law that Medicare and Medicaid payments are not the types of governmental payments anticipated in the statute and therefore determined that the competitive bidding requirements of R.C. 505.44 did not apply to the contract that York Township entered into with LifeStar. The court therefore dismissed Medcorp's complaint. On May 28, 2002, the court filed a judgment entry reflecting its ruling at the hearing. It is from that judgment that Medcorp now appeals.
 {¶ 8} In its sole assignment of error, Medcorp challenges the trial court's denial of its request for a preliminary injunction and dismissal of its complaint.
 {¶ 9} Initially, we must determine what is the appropriate standard of review to apply to the present appeal. Medcorp asserts that because the court essentially concluded that Medcorp failed to state a claim upon which relief could be granted, we must review the matter de novo. We disagree with Medcorp's assessment of the trial court's ruling.
 {¶ 10} The request for an injunction differs from a regular civil complaint in that "[a]n injunction is an extraordinary remedy in equity where there is no adequate remedy available at law. It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot." Garono v. State (1988),37 Ohio St.3d 171, 173. In the present case, the court did not dismiss the complaint for failure to state a claim upon which relief could be granted but, rather, ruled on the merits of the complaint. Civ.R. 65(B)(2) provides that either before or after the commencement of the hearing on the motion for a preliminary injunction, the trial court may order that the trial of the action on the merits be advanced and consolidated with the hearing. While a trial court is required to notify the parties of its intent to consolidate the matters, Turoff v. Stefanac
(1984), 16 Ohio App.3d 227, 228-229, a court's failure to so inform the parties is not reversible error where neither party objects to the consolidation and the parties were fully prepared to proceed on the merits. Strah v. Lake Cty. Humane Soc. (1993), 90 Ohio App.3d 822, 835.
 {¶ 11} In the present case, the transcript from the hearing on the request for a preliminary injunction reveals that the court proceeded to review the merits of the case, neither party objected and both parties were prepared to present their arguments and evidence. The trial court's ruling must therefore be viewed as a denial of the request on its merits. The Supreme Court of Ohio has specified that "[t]he grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." Garono, supra at 173, citing Perkins v. Quaker City (1956), 165 Ohio St. 120,125. We therefore must determine if the trial court's conclusion that under R.C. 505.44 Medicare and Medicaid payments made to an ambulance company do not constitute "operating funds from governmental entities," was unreasonable, arbitrary or unconscionable.
 {¶ 12} R.C. 505.44 reads in relevant part: "In order to obtain the services of ambulance service organizations * * * a township may enter into a contract with one or more state agencies, townships, municipal corporations, counties, nonprofit corporations, joint emergency medical services districts, fire and ambulance districts, or private ambulance owners * * * upon such terms as are agreed to by them, to furnish or receive services from ambulance or emergency medical services organizations * * * if the contract is first authorized by the respective boards of township trustees * * *. Such contracts shall not be entered into with a state agency or nonprofit corporation that receives more than half of its operating funds from governmental entities with the intention of directly competing with the operation of other ambulance, emergency medical, or nonemergency patient transport service organizations in the township unless the state agency or nonprofit corporation is awarded the contract after submitting the lowest and best bid to the board of township trustees." (Emphasis added.) There are no cases on point interpreting the emphasized portion of the statute. Nevertheless, we cannot say that the trial court abused its discretion in determining that the phrase "operating funds from governmental entities" does not include payments from Medicare and Medicaid.
 {¶ 13} Medicaid and Medicare are two separate forms of public assistance. "The Medicaid program was established in 1965, pursuant to Title XIX of the Social Security Act, 79 Stat. 343, as amended, Section 1396 et seq., Title 42, U.S. Code, for the purpose of providing `federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons.' Harris v. McRae (1980), 448 U.S. 297,301 * * *. Ohio has elected to participate in the Medicaid program. R.C.5111.02. Each participating state develops a plan containing reasonable standards for determining eligibility for and the extent of medical assistance. Section 1396a(a)(17), Title 42, U.S. Code. `An individual is entitled to Medicaid if he fulfills the criteria established by the state in which he lives.' Schweiker v. Gray Panthers (1981), 453 U.S. 34, 36-37
* * *." Martin v. Ohio Dept. of Human Serv. (1997), 122 Ohio App.3d 679,681. Accordingly, a provider of medical services will not be reimbursed for those services unless the individual receiving the medical services qualifies for Medicaid benefits. Those benefits, therefore, in our view, clearly belong to the individual receiving the medical services and are simply assigned over to the medical provider.
 {¶ 14} Similarly, Medicare is a federal assistance program that provides health insurance coverage to the elderly and disabled. See Section 1395-1395ccc, Title, U.S.Code. Again, however, it is the recipient's status that qualifies him or her for Medicare benefits. Absent the recipient's qualifying for benefits under the Medicare program, a medical provider has no claim for reimbursement.
 {¶ 15} In our view, the benefits provided for by the Medicaid and Medicare programs belong to the individual receiving the medical care, and are simply assigned over to the medical provider, much like a standard insurance program. Accordingly, we cannot say that the General Assembly intended to include Medicaid and Medicare benefits in its use of the phrase "operating funds from governmental entities" in R.C. 505.44. In particular, we note that R.C. 505.44 does not define the time period in which a nonprofit corporation must receive more than 50 percent of its operating funds from governmental entities. Because a medical provider's receipt of Medicare and Medicaid funds will fluctuate yearly depending on the number of Medicaid and Medicare beneficiaries served, we cannot believe that the phrase "operating funds from governmental entities" was intended to include those benefits.
 {¶ 16} We therefore conclude that the trial court did not abuse its discretion in dismissing Medcorp's complaint and the sole assignment of error is not well-taken.
 {¶ 17} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Fulton County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.