[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Home Advocate Trustees, L.L.C.,* Slip Opinion No. 2017-Ohio-9108.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-9108

OHIO STATE BAR ASSOCIATION *v.* HOME ADVOCATE TRUSTEES, L.L.C..

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Home Advocate Trustees, L.L.C.,* Slip Opinion No. 2017-Ohio-9108.]

*Unauthorized practice of law—Filing legal pleadings and providing advice to Ohio residents whose Ohio real property was in foreclosure—Injunction issued and civil penalty imposed.*

(No. 2017-0541—Submitted June 7, 2017—Decided December 20, 2017.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 13-01.

_____

**Per Curiam.**

{¶ 1} On March 28, 2013, relator, Ohio State Bar Association, filed a complaint with the Board of Commissioners on the Unauthorized Practice of Law against respondent, Home Advocate Trustees, L.L.C. ("HAT"), a Washington corporation, and Melanie Biscardi, of Land O'Lakes, Florida, and Shonnie Fancy,

purportedly of Redmond, Washington. The complaint alleged that HAT, Biscardi, and Fancy engaged in the unauthorized practice of law by providing legal counsel to Ohio residents whose Ohio real property was in foreclosure and that their conduct constituted the unauthorized practice of law.

{¶ 2} Unable to serve the complaint on Fancy, relator voluntarily dismissed her from the case. Biscardi answered the complaint and was deposed by relator. Although HAT was served with a copy of the complaint at its California office, it did not file an answer.

{¶ 3} In October 2013, relator moved for judgment on the pleadings as to Biscardi and default judgment as to HAT or alternatively, for summary judgment as to both. On review, a three-member panel of the board ordered relator to submit a supplemental brief to address the issue of civil penalties and allowed HAT and Biscardi 20 days to file an answer brief. Relator filed the brief and later dismissed the case against Biscardi pursuant to Civ.R. 41(a).

{¶ 4} The panel granted a default judgment against HAT and found that the company had engaged in the unauthorized practice of law as charged in the complaint. Consequently, it recommended that we issue an injunction prohibiting HAT from engaging in further acts of the unauthorized practice of law and impose a civil penalty of $10,000. The board adopted the panel's findings and recommendation.

{¶ 5} We adopt the board's findings of fact and determination that HAT engaged in the unauthorized practice of law, and we agree that an injunction and civil penalties are warranted.

**Findings of Fact**

{¶ 6} At her deposition, Biscardi testified that her first contact with HAT occurred when she responded to a Craigslist job posting for a paralegal with a real-estate background. Mark Farley interviewed her by telephone and introduced himself as an attorney. Biscardi accepted the job and worked as an independent

contractor for HAT from February or March 2011 until October 2012, earning $12 per hour.

{¶ 7} Throughout her employment, Biscardi acted under the supervision and instruction of Farley—whom she believed to be an attorney. Later, she learned that his legal name was Mark S. Farhood and that he was not, in fact, an attorney. Indeed, none of the individuals named in the complaint has ever been admitted to the practice of law in Ohio.

{¶ 8} Biscardi explained that HAT marketed itself as an entity that provided assistance to financially distressed homeowners. It was her understanding that after a homeowner transferred property to HAT, the company would assist that homeowner in obtaining a new mortgage for the property and help the homeowner get the property back.

{¶ 9} As a paralegal, legal supervisor, and foreclosure specialist, Biscardi supervised four or five HAT employees who were located in several foreign countries. She admitted that the employees that she supervised prepared and filed documents on behalf of homeowners using templates provided by Farley. But she noted that those actions were also supervised by Farley. The documents filed included notices of appearance, change-of-mailing-address and third-party authorizations, proofs of service, and requests for production of documents in two Ohio cases: *CitiMortgage, Inc. v. Huston*, Franklin Cty. Common Pleas case No. 11 CVE 07-9132, and *U.S. Bank Home Mtg. v. Kpanlin*, Cuyahoga Cty. Common Pleas case No. CV11760815.

{¶ 10} In both cases, the notices of appearance appear to be signed by Pamela Huston and Marcia Kpanlin. The notices also purport to authorize Biscardi—a non-lawyer—to communicate with the court, attend hearings, and receive documents on Huston's and Kpanlin's behalf.

{¶ 11} The change-of-mailing-address and third-party authorizations sought to substitute HAT's San Diego, California mailing address for Huston's and

Kpanlin's record addresses. They also purport to authorize HAT, "Mark Farley, Attorney," and "Melanie Biscardi, Paralegal" to access all information regarding Huston's and Kpanlin's mortgages and to negotiate with the mortgage companies. Although those documents appear to have been signed by Huston and Kpanlin, a cover letter sent to the court with the Kpanlin documents was printed on HAT letterhead and signed by Shonnie Fancy, with a signature block that identified her as a "Consumer Advocate, Foreclosure Specialist" for HAT.

{¶ 12} In contrast to the purported pro se filings, the proof of service and request for production of documents filed in each case bear Biscardi's signature. Biscardi had provided a scanned version of her own signature to Fancy, who then copied and pasted the signature to various pleadings and mailings, including the documents filed in these foreclosure cases.

{¶ 13} In Huston's case, the plaintiff moved to strike HAT's notice of appearance and discovery requests in the trial court on the ground that Biscardi's preparation and filing of the documents constituted the unauthorized practice of law. A magistrate granted the motion. And the docket shows that Huston's property was ultimately foreclosed upon and sold at a sheriff's sale.

{¶ 14} Biscardi testified that two federal agents visited her home in December 2012—approximately two months after she quit working for HAT—to inform her that they were investigating HAT and Farhood (a.k.a. Farley) for fraud. At that time, she learned that HAT had been acquiring properties from distressed homeowners, renting the property, pocketing the rental proceeds, and taking no action to help the homeowners establish new mortgages or obtain loan modifications. She later learned that Farley had been sentenced to 11 years in prison with an additional 3 years of supervised release for his role in HAT's scheme to defraud distressed homeowners.

4

**HAT Engaged in the Unauthorized Practice of Law**

{¶ 15} The Supreme Court of Ohio has original jurisdiction regarding admission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law in the state. Article IV, Section 2(B)(1)(g), Ohio Constitution; *Royal Indemn. Co. v. J.C. Penney Co., Inc.*, 27 Ohio St.3d 31, 34, 501 N.E.2d 617 (1986). Accordingly, this court has exclusive jurisdiction to regulate the unauthorized practice of law in Ohio. *Greenspan v. Third Fed. S. & L. Assn.*, 122 Ohio St.3d 455, 2009-Ohio-3508, 912 N.E.2d 567, ¶ 16; *Lorain Cty. Bar Assn. v. Kocak*, 121 Ohio St.3d 396, 2009-Ohio-1430, 904 N.E.2d 885, ¶ 16. The purpose of that regulation is to "protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

{¶ 16} The unauthorized practice of law is the rendering of legal services for another by any person not admitted or otherwise certified to practice law in Ohio. Gov.Bar R. VII(2)(A). The rendering of legal services includes the " 'preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts.' " *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 28, 193 N.E. 650 (1934), quoting *People v. Alfani*, 227 N.Y. 334, 337-338, 125 N.E. 671 (1919).

{¶ 17} A motion for default judgment in an unauthorized-practice-of-law case must be supported by sworn or certified documentary prima facie evidence in support of the allegations of the complaint. Gov.Bar R. VII(7)(B)(2). Here, the board found that HAT, through its employees, including Biscardi, engaged in the unauthorized practice of law by preparing and filing documents in Ohio courts in the *Huston* and *Kpanlin* cases. Having independently reviewed the record—

including Biscardi's deposition testimony and certified copies of documents filed in Huston's and Kpanlin's cases—we adopt the board's finding in that regard.

## An Injunction and Civil Penalties Are Warranted

{¶ 18} Having found that HAT engaged in the unauthorized practice of law, we adopt the board's recommendation that we issue an injunction prohibiting HAT from attempting to represent the legal interests of others performing legal services in the state of Ohio.

{¶ 19} In determining whether HAT's conduct warrants the imposition of civil penalties, the board considered the factors set forth in Gov.Bar R. VII(8)(B)(1) through (5) and UPL Reg. 400(E) and (F). It found that HAT (1) failed to cooperate in relator's investigation and this proceeding, thereby preventing relator from discovering the true extent of the company's unauthorized practice of law in Ohio, (2) flagrantly violated Ohio law, concealed the true identity of the company's principals, and deceived customers and employees alike, and (3) attempted to delay foreclosure proceedings for its own financial benefit. Because relator was not able to locate Huston or Kpanlin, it was unable to ascertain the full extent of the harm that HAT caused them. On these facts, the board recommended that we impose civil penalties of $5,000 each for the Huston and Kpanlin matters, for a total of $10,000. We agree that a civil penalty of $10,000 is appropriate in this case.

{¶ 20} Accordingly, we enjoin Home Advocate Trustees, L.L.C., its officers, agents, employees, successors, and assigns from attempting to represent the legal interests of others or attempting to advise others with regard to pending foreclosure proceedings and from engaging in all other acts constituting the unauthorized practice of law in Ohio. We also order Home Advocate Trustees, L.L.C., to pay a civil penalty in the amount of $10,000. Costs are taxed to Home Advocate Trustees, L.L.C.

Judgment accordingly.

O'Connor, C.J., and O'Donnell, Kennedy, French, O'Neill, Fischer, and DeWine, JJ., concur.

_____

Arthur Law Firm Co., L.P.A., and Jennifer N. Brown; and Jean D. Blankenship, Bar Counsel, for relator.

_____