NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0534n.06

No. 14-3046

**FILED**
Jul 21, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

JOSEPH A. STARKEY; BARBARA STARKEY,          )
                                             )
        Plaintiffs-Appellants,               )
                                             )
v.                                           )          ON APPEAL FROM THE
                                             )          UNITED STATES DISTRICT
JPMORGAN CHASE BANK, NA,                      )          COURT FOR THE SOUTHERN
                                             )          DISTRICT OF OHIO
        Defendant-Appellee.                  )
                                             )
                                             )


BEFORE: COLE, ROGERS, and ALARCÓN,[*] Circuit Judges.

   ROGERS, Circuit Judge.   Joseph and Barbara Starkey appeal the district court's

dismissal of several state law claims that they brought against JPMorgan Chase. This dispute

arises out of a 2012 letter the Starkeys received from Chase concerning the National Mortgage

Settlement. The letter said that Chase was releasing the Starkeys' mortgage loan associated with

an account number ending with x2307 as a part of the settlement. That account number referred

to an old mortgage that the Starkeys allege had been discharged in bankruptcy. But the Starkeys

also had a new mortgage loan with Chase associated with an account number ending in x5399.

The Starkeys believed that the letter must have referred to the newer loan. They called Chase,

and a representative allegedly confirmed that Chase was discharging their new loan. The

Starkeys stopped paying their mortgage, but soon began receiving delinquency notices. In

_____

[*] The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

response, the Starkeys filed this lawsuit alleging common law fraud, conversion, and unjust enrichment, as well as federal statutory claims no longer pursued on appeal. However, the Starkeys' fraud claim is implausible, and their conversion and unjust enrichment claims are time-barred. Furthermore, the district court did not err in dismissing the Starkey's complaint with prejudice.

The Starkeys bought property in Cincinnati in 1999. To pay for their new home, the Starkeys executed a note and mortgage in favor of Bank One, N.A. The Starkeys entered bankruptcy in September 2001. The Starkeys' bankruptcy lawyer learned that Bank One had failed to record the mortgage, and so Bank One was treated like a general, unsecured creditor during the bankruptcy. The trustee paid Bank One approximately $45,000 in bankruptcy disbursements. Following the Starkeys' discharge in 2004, they executed a new note and mortgage on their property in Cincinnati, this time with Integrity Funding Corporation. Integrity recorded the mortgage, and eventually transferred it to Chase Manhattan Mortgage, a predecessor to JPMorgan Chase. The Starkeys filed a second bankruptcy in 2007, but that proceeding had no effect on their 2004 mortgage obligation. Meanwhile, Chase purchased and merged with Bank One.

On September 12, 2012, the Starkeys received a letter from Chase. In the letter, Chase explained that, as a part of the National Mortgage Settlement, Chase was cancelling a loan the Starkeys had with the bank. The letter further explained that the release applied to the loan associated with an account number ending in x2037. The Starkeys believed that the letter referred to the 2004 mortgage, although exactly why they held that belief is unclear. According to their Reply Brief, due to the 2001 bankruptcy, the Starkeys "were unclear which mortgage

loan" Chase meant to release in the September 2012 letter. The Starkeys called Chase for clarification. The complaint says:

> Upon information and belief, Plaintiffs via only telephonic communications with [Chase] customer service, were told their [2004] mortgage obligation . . . had been released. Based on this Information, Plaintiffs did cease to make mortgage payments to Chase.

In early 2013, Chase began sending delinquency notices to the Starkeys. These notices referred to a mortgage loan associated with an account number ending in x5399. Confused, the Starkeys contacted the Ohio Attorney General and the Consumer Financial Protection Bureau. In response to those inquiries, Chase explained that it had "released the mortgage recorded in 1999," "asserted [its] rights to continue to collect on the 2004 mortgage," and sent the Starkeys an account history for the 1999 mortgage, which was apparently associated with the account number ending in x2037.

The Starkeys sued Chase in federal district court in September 2013. The complaint included two federal claims—violations of the Real Estate Settlement Procedures Act and the Home Affordable Modification Program—and four state-law claims—common law fraud, conversion, unjust enrichment, and an action to quiet title. Chase filed a motion to dismiss that the district court granted. The district court dismissed the fraud claim because the Starkeys failed to allege plausibly that Chase acted knowingly or recklessly and because they failed to make a plausible allegation of detrimental reliance on any false statement made by Chase. The district court held that conversion and unjust enrichment claims, which involve payments that Bank One allegedly collected after the 1999 mortgage was discharged in bankruptcy, were time-barred. The Starkeys appeal the dismissal of only these three claims, and also argue that the district court abused its discretion by dismissing their complaint with prejudice.

The Starkeys' complaint fails to allege a plausible fraud claim. "The elements of fraud under Ohio law are: '(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 449 (6th Cir. 2012) (quoting *Gaines v. Preterm–Cleveland, Inc.*, 514 N.E.2d 709, 712 (1987)). The Starkeys contend that Chase committed fraud by "misrepresent[ing] that the September 2012 letter pertained to the Starkeys' 2004 Mortgage Loan."

However, the Starkeys' theory is implausible. They allege that Chase, seeking to trick them into defaulting on their mortgage, sent the couple a release letter pertaining to their 1999 mortgage. Over the phone, Chase representatives misled the Starkeys into believing the letter concerned their 2004 mortgage. The Starkeys fell for the ruse and stopped paying their mortgage. Putting aside the improbability of this theory, the allegations describing the alleged phone call are inadequate. The paragraph of the complaint addressing the phone call with Chase representatives says: "Upon information and belief, Plaintiffs via only telephonic communications with customer service, were told their [2004] mortgage obligation . . . had been released." It is true that pleading on information and belief may be permissible in certain circumstances. For example, sometimes a plaintiff may lack personal knowledge of a fact, but have "sufficient data to justify interposing an allegation on the subject" or be required to "rely on information furnished by others." Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012). "However, pleading on information and belief is not an appropriate form of pleading if

the matter is within the personal knowledge of the pleader." *Id.* Because one of the Starkeys was on the other end of line when he or she spoke with Chase representatives, the Starkeys must have had personal knowledge of whether Chase said the September 2012 letter pertained to the 2004 mortgage or not. Pleading this allegation on information and belief was improper under these circumstances.

Absent the deficient allegations regarding the phone call, all of the facts in the complaint indicate that the September 2012 Letter concerned the 1999 mortgage. The September 2012 letter referred to a loan associated with an account number ending in x2037. Nothing in the complaint suggests that this account number is associated with the 2004 mortgage. In fact, the Starkeys themselves appear to recognize that this account number pertains to the 1999 mortgage based on their argument that the September 2012 letter proved that Chase wrongfully tried to collect on the 1999 mortgage after it was discharged. Furthermore, the delinquency notices concerned account number x5399, which was not the number listed in September 2012 letter. And Chase confirmed all of this in letters responding to the Ohio Attorney General and the CFPB. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). The facts of this complaint indicate that the letter pertained to the 1999 mortgage. The only possible misrepresentation occurred during the phone call, but because those allegations were pled on information and belief, it appears that not even the Starkeys are sure whether Chase told them the September

2012 letter pertained to the 2004 mortgage or not. This court cannot reasonably draw an inference that Chase knowingly or reckless made a false statement on these facts.

The Starkeys' conversion and unjust enrichment claims are time-barred. According to their complaint, Bank One, Chase's predecessor, accepted payments on the 1999 mortgage up until 2005 even though the 2001 bankruptcy discharged that obligation. This court need not address whether that conduct could support a claim for conversion or unjust enrichment because these claims are time-barred. Ohio has a four-year statute of limitations for conversion, O.R.C. § 2305.09, and a six-year period for unjust enrichment claims, O.R.C. § 2305.07.[1] Furthermore, the "discovery rule" applies to the Starkeys' conversion claim. *Toledo Museum of Art v. Ullin*, 477 F. Supp. 2d 802, 807 (N.D. Ohio 2006). This means that the statute of limitations began running when the Starkeys knew or should have known that their property was being converted. *Hambleton*, 465 N.E.2d at 1301.

The Starkeys' conversion claim accrued in 2005 at the latest. The Starkeys contend that they "could not have known that Chase Bank should not have been collecting amounts on their 1999 Mortgage until after receipt of the September 2012 Letter." This argument is implausible considering the fact that the Starkeys elsewhere contend that their 2001 bankruptcy discharged their 1999 mortgage as an unsecured debt. A reasonable person would have inquired into why he was being billed for and paying a debt he no longer owed. Thus the Starkeys' conversion claim accrued when they began paying Bank One for a debt they believed had been discharged.

---

[1] The parties argue and the district court held that the statute of limitations for unjust enrichment claims is four years in Ohio. However, O.R.C. § 2305.07, which has a six-year period, governs unjust enrichment claims. *See U.S. Bank v. Graham*, 923 N.E.2d 699, 701 (Ohio Ct. App. 2009).

The confusion below may have arisen because Ohio courts will look "to the actual nature or subject matter of the case, rather than the form in which the action is pleaded" to determine which statute of limitations applies. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). In other words, if the Starkeys had brought a tort claim in contract clothing, then the four-year period should apply. However, this court need not address this issue because the Starkey's unjust enrichment claim is barred even if the longer six-year period applies.

At the very latest, their claim accrued in 2005, when those payments stopped. Thus the statute of limitations period elapsed in 2009 at the latest.

The district court reasoned along these lines, but the Starkeys say the court misapprehended their argument. Rather, "the Complaint is actually alleging that Chase Bank converted the Starkeys' funds by accepting payments on the 1999 mortgage even though, as revealed in the September 2012 Letter, Chase Bank has no right to payment on the 1999 Mortgage." Exactly how the district court misconstrued the Starkeys' argument is unclear. But even if the district court did misread the Starkeys' arguments, nothing in the letter indicates that Chase acted improperly in the past. The September 2012 letter states in large, bold letters: "We are cancelling the *remaining* amount you owe Chase!" (emphasis added) The letter further states that, "you will owe *nothing more* on the loan." (emphasis added) Both statements clearly imply that the Starkeys would owe Chase nothing else going forward, not that Chase wrongfully collected money in the past.

The unjust enrichment claim is also time-barred. The parties and district court assumed that the discovery rule applies to unjust enrichment claims. However, the Ohio courts actually apply a similar but slightly different rule. In Ohio, an unjust enrichment claim does not accrue "until the last point in time that the plaintiff conferred and a defendant unjustly received a benefit." *Desai v. Franklin*, 895 N.E.2d 875, 885 (Ohio Ct. App. 2008); *see also Med. Mut. of Ohio v. K. Amalia Enters. Inc.*, 548 F.3d 383, 393 n.6 (6th Cir. 2008). The Starkeys' unjust enrichment claims would accrue on the date of the last unjust payment, i.e. sometime in 2005. Thus the statute of limitations period ended sometime in 2011, two years before the Starkeys' suit was filed.

Finally, the district court did not abuse its discretion in dismissing the Starkey's complaint with prejudice. This court's "default rule is that 'if a party does not file a motion to amend or a proposed amended complaint' in the district court, 'it is not an abuse of discretion for the district court to dismiss the claims with prejudice.'" *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012) (quoting *CNH Am. LLC v. UAW*, 645 F.3d 785, 795 (6th Cir. 2011)). The Starkeys could have amended their complaint under Rule 15, moved to vacate or set the district court's judgment after it granted Chase's motion to dismiss under Rule 59 or 60, *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002), or at least requested that the district court not dismiss their complaint with prejudice in their brief in opposition. Because the Starkeys took none of those steps, the district court did not abuse its discretion in dismissing their complaint with prejudice.

The judgment of the district court is AFFIRMED.